UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| SHIRLEY MIEDEMA, | ) | |
| | ) | |
| Plaintiff, | ) | 17 C 9087 |
| | ) | |
| vs. | ) | Judge Gary Feinerman |
| | ) | |
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Defendant. | ) | |

## MEMORANDUM OPINION AND ORDER

Shirley Miedema brought this suit against the United States under the Federal Tort Claims Act ("FTCA"), 28 U.S.C. § 2671 *et seq.*, alleging that a U.S. Postal Service minivan hit her while she was riding her bicycle in a crosswalk. Docs. 1, 13, 18. The court held a bench trial. Docs. 46-48. Pursuant to Civil Rule 52(a), the court enters the following Findings of Fact and Conclusions of Law. To the extent that any Findings of Fact may be considered Conclusions of Law, they shall be deemed Conclusions of Law, and vice versa. After carefully considering the evidence and assessing the witnesses' credibility, the court finds that Miedema is more than 50 percent at fault for her injury and therefore enters judgment in favor of the United States.

### Findings of Fact

**A.    The Intersection**

1.    The intersection of 14th Street and Harlem Avenue in Berwyn, Illinois is a T-intersection, such that westbound drivers on 14th Street may turn either left or right onto Harlem. Doc. 46, Alas Testimony.

2.    Westbound traffic on 14th Street is controlled by a stop sign at the intersection with Harlem. *Ibid.*; *id.*, Miedema Testimony.

3. There is a thick white stop line on the westbound side of 14th Street at the intersection. *Id*., Miedema Testimony; *id*., Alas Testimony.

4. Between the stop line and Harlem is a marked crosswalk. *Id*., Miedema Testimony; *id*., Alas Testimony.

5. To see whether it is clear to turn onto Harlem, drivers on 14th Street need to pull up beyond the stop line. *Id*., Alas Testimony.

    **B.**  **The Incident**

6. On November 3, 2016 at around 3 p.m., Miedema was riding her bicycle southbound on the sidewalk on the east side of Harlem toward 14th Street. *Id*., Miedema Testimony.

7. At the same time, postal carrier Edgar Alas was driving westbound in a postal minivan on 14th Street toward Harlem. *Id*., Alas Testimony.

8. Alas reached the intersection before Miedema. *Ibid*.; *id*., Miedema Testimony.

9. Alas stopped at the thick white stop line. *Id*., Alas Testimony.

10. Alas, intending to make a right turn, looked both left and right and then inched the minivan into the crosswalk. *Ibid*.; *id*., Miedema Testimony.

11. As she admitted at trial, when Miedema arrived at the intersection, Alas's minivan was already partly within the crosswalk. *Id*., Miedema Testimony.

12. As she further admitted at trial, after arriving at the intersection, Miedema waited on the sidewalk for about seven seconds. *Ibid*.

13. And as she also admitted at trial, during that time Miedema saw Alas looking left (away from her) but never saw him look in her direction. *Ibid*. Miedema also saw that Alas's minivan was inching forward. *Ibid*. From these observations, Miedema understood that Alas was checking traffic on Harlem to see whether it was safe to turn. *Ibid*.

14. Miedema then began to ride her bicycle across the crosswalk, in front of Alas's minivan. *Ibid*.

15. While Miedema was crossing 14th Street, Alas again inched forward, and Miedema fell off her bicycle, injuring her right knee. *Ibid*.; *Id*., Alas Testimony.

16. The minivan did not make contact with Miedema or her bicycle. Although Miedema told her medical providers and testified in court that the minivan hit her, *id*., Miedema Testimony; Def. Ex. 6-A, she earlier told two different versions of the story. First, when Alas's supervisor, Arturo Jimenez, arrived at the intersection shortly after her fall, Miedema told him that the minivan had not hit her. Doc. 47, Jimenez Testimony. Second, after Jimenez drove Miedema to her home and called an ambulance, *ibid*., she told the police officers accompanying the ambulance, Edward Tovar and Joseph Pesa, that she was unsure whether the minivan had hit her, Doc. 46, Miedema Testimony; *id*., Tovar Testimony; Doc. 47, Pesa Testimony. Moreover, neither Tovar nor Pesa saw any damage or other signs of a collision on Miedema's bicycle or the minivan. Doc. 46, Tovar Testimony; Doc. 47, Pesa Testimony. And Alas told Tovar that he did not hit Miedema. Doc. 46, Tovar Testimony. Given Alas's denial, Miedema's uncertainty, and the lack of physical evidence of a collision, Tovar and Pesa concluded that no collision had occurred. *Ibid*.; Doc. 47, Pesa Testimony. And given the evidence in this paragraph, the court concurs with Tovar and Pesa's conclusion.

17. In April 2017, Miedema submitted an administrative claim to the Postal Service regarding this incident, demanding $588,619.90 in damages. Def. Ex. 1.

## Conclusions of Law

Illinois tort law governs the substantive issues in this FTCA suit because the accident took place in Illinois. *See Smith v. United States*, 860 F.3d 995, 998 (7th Cir. 2017). "To

establish a claim for negligence under Illinois law, a plaintiff must prove the existence of a duty of care owed by the defendant to the plaintiff, a breach of that duty, and an injury proximately caused by that breach." *Swearingen v. Momentive Specialty Chems., Inc.*, 662 F.3d 969, 972 (7th Cir. 2011). Under the comparative fault regime set out in 735 ILCS 5/2-1116, a plaintiff cannot recover damages if her share of the fault exceeds 50 percent. 735 ILCS 5/2-1116(c) ("In all actions on account of … bodily injury[,] … [t]he plaintiff shall be barred from recovering damages if the trier of fact finds that the contributory fault on the part of the plaintiff is more than 50% of the proximate cause of the injury or damage for which recovery is sought."), *invalidated in other part by Best v. Taylor Mach. Works*, 689 N.E.2d 1057 (Ill. 1997); *see also Robinson v. McNeil Consumer Healthcare*, 615 F.3d 861, 865 (7th Cir. 2010) (Illinois law) (noting that "the plaintiff's negligence is a complete defense" when it "exceeds the defendant's").

Illinois law imposes on drivers the duty to "exercise due care to avoid colliding with … any person operating a bicycle." 625 ILCS 5/11-1003.1; *see Merca v. Rhodes*, 960 N.E.2d 85, 96 (Ill. App. 2011) (noting that a driver owes pedestrians a duty "to operate her vehicle with ordinary care and caution"). The driver's duty includes the duty to comply with the Illinois Vehicle Code's right-of-way provisions. *See Ziemba v. Mierzwa*, 566 N.E.2d 1365, 1368 (Ill. 1991) (noting that exiting a driveway without yielding the right-of-way as required by statute would "amount to a violation of the driver's statutorily imposed standard of care"); *see also Vancura v. Katris*, 939 N.E.2d 328, 344 (Ill. 2010) (noting that a violation of a statute "designed to protect human life or property" is *prima facie* evidence of a breach of duty) (internal quotation marks omitted); *Bausch v. Stryker Corp.*, 630 F.3d 546, 553 (7th Cir. 2010) (same).

4

Miedema contends that Alas failed to exercise ordinary care in his attempt to make a right turn onto Harlem, in part by failing to yield the right-of-way as required by 625 ILCS 5/11-903, which states in pertinent part: "Where stop signs … are in place at an intersection … , drivers of vehicles shall stop before entering the nearest crosswalk and *pedestrians within or entering the crosswalk* at either edge of the roadway shall have the right-of-way *over vehicles so stopped*." 625 ILCS 5/11-903 (emphasis added). For purposes of that statute, a bicyclist on a sidewalk or in a crosswalk is considered a pedestrian. *See* 625 ILCS 5/11-1512(c) ("A person propelling a bicycle upon and along a sidewalk, or across a roadway upon and along a crosswalk, shall have all the rights and duties applicable to a pedestrian under the same circumstances.").

Applying these rules to her own version of the relevant events, Miedema did not have the right-of-way when she entered the crosswalk in front of Alas's minivan. Miedema admitted that Alas's vehicle was already in the crosswalk by the time she reached the intersection. It follows that Miedema was not "within or entering the crosswalk" when Alas stopped at the stop line. 625 ILCS 5/11-903. Alas accordingly did not breach his statutory duty to yield the right-of-way. Nor did Alas otherwise act unreasonably in stopping at the stop line, looking both ways, and only then inching into the crosswalk to make his right turn—all before Miedema arrived at the intersection. *See Cusick v. Clark*, 360 N.E.2d 160, 164 (Ill. App. 1977) (holding that the plaintiff was not entitled to judgment as a matter of law that the defendant was negligent where the evidence permitted a reasonable jury to conclude "that the plaintiff entered the crosswalk after the defendant's car had entered the crosswalk"); *see also Holeman v. Smallwood*, 412 N.E.2d 41, 43-44 (Ill. App. 1980) (same, even though the plaintiff was crossing with a "walk" signal and thus had the right-of-way). At worst, after Alas saw that traffic on Harlem was clear to the left, he took his foot off the brake to begin his turn before he again looked right, saw Miedema in

5

front of him, and stopped before hitting her or her bicycle. Doc. 46, Alas Testimony (Alas testifying that he inched forward by easing off the brake, saw Miedema, and then hit the brake again); *ibid*. (Alas testifying that he saw Miedema "right before [he] took … [his] foot off the brake," at which point he "reapplied the brake"). But even if he did those things, and even if doing those things made him negligent, Miedema was more than 50 percent at fault for her fall—which the court will assume (in her favor) was caused by being startled by Alas's moving forward and then stopping before hitting her.

Miedema conceded during closing arguments that she "bears some responsibility for starting out into [the] crosswalk knowing" that Alas's vehicle was "partially blocking the crosswalk," but contended that "a fair apportionment of [her fault] … would be 25 percent." Doc. 48. That substantially underestimates the extent of Miedema's responsibility for her fall. As noted, Miedema entered the crosswalk even though she did not have the right-of-way, and in so doing acted unreasonably. *See* 625 ILCS 5/11-903 (providing that pedestrians "within or entering [a] crosswalk" when a driver stops as required before entering the crosswalk "shall have the right-of-way over vehicles so stopped"). More fundamentally, Miedema was required to exercise reasonable care in crossing the street on her bicycle regardless whether she had the right-of-way. *See Albaugh v. Cooley*, 429 N.E.2d 837, 841 (Ill. 1981) (affirming the jury's finding that the plaintiff was negligent where the plaintiff, who had the right-of-way, entered a crosswalk despite seeing an approaching car "one-half to one block away in an S curve," knowing that the speed limit was 30 mph, and knowing that the car would "not have occasion to stop before" reaching the crosswalk); *Moran v. Gatz*, 62 N.E.2d 443, 444 (Ill. 1945) ("[The plaintiff] had no right to rely entirely on the fact that she had the right of way."); *Knights v. United States*, 203 F. Supp. 3d 916, 931 (N.D. Ill. 2016) ("Even when crossing in a crosswalk, a

pedestrian must still exercise due care for his own safety.") (collecting cases). By her own admission, Miedema arrived at the intersection, saw Alas's minivan already partly blocking the crosswalk, waited seven seconds during which she did not see Alas look her way, recognized that Alas was checking traffic on Harlem in preparation for a turn, and *still* crossed in front of him. Doc. 46, Miedema Testimony; Doc. 48, Miedema Closing Argument. Miedema clearly knew that Alas was in the process of turning and had not seen her, making it highly unreasonable for her to enter the crosswalk in front of him. *See Albaugh*, 429 N.E.2d at 841. Given that Alas—at worst—was negligent only in momentarily inching forward before looking right again, seeing Miedema, and stopping without hitting her, Miedema's far greater negligence in riding her bicycle in front of his minivan without the right-of-way and knowing that he had not seen her makes her far more than 50 percent responsible for her fall, thus barring her from any recovery. *See* 735 ILCS 5/2-1116(c); *Miller v. Ill. Cent. R.R. Co.*, 474 F.3d 951, 957 (7th Cir. 2007) (noting that if the plaintiff was "more careless than the [defendant]," the plaintiff's negligence is a "complete defense"); *Guy v. Steurer*, 606 N.E.2d 852, 857 (Ill. App. 1992) (holding that a reasonable factfinder could conclude that the plaintiff was more than 50 percent at fault for the collision even though he had the right-of-way, where the plaintiff "observed [the] defendant travel across four lanes of traffic and into his path," had no reason to believe that the defendant would stop, and failed to act on his opportunity to "avoid the collision by decreasing his speed, sounding his horn, or changing lanes").

**Conclusion**

The court finds that Miedema was more than 50 percent at fault for her fall and therefore that she is barred from recovering. The court will enter judgment in favor of the United States and against Miedema.

July 9, 2019

_____
United States District Judge